UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MICHELLE C. NEWTON,

        Petitioner,

v.

WARDEN NANETTE BARNES, FCI
Waseca, MN,

        Respondent.

Case No. 19-cv-1037 (ECT/ECW)

**REPORT AND RECOMMENDATON**

---

This matter is before the Court on Petitioner Michelle C. Newton's ("Newton") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that the Petition be dismissed without prejudice.

      **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Newton was convicted in the United States District Court for the Western District of Missouri and sentenced to 46 months imprisonment. (Dkt. No. 1; Dkt. No. 6 ¶ 3; Dkt. No. 6-1.) Newton is presently incarcerated at Federal Correctional Institution in Waseca, Minnesota. (*Id.*) Under current calculation methods, Newton is projected to be released on June 21, 2019 due to earned good conduct time. (*Id.*) Newton in her Petition challenges the delayed implementation of the First Step Act of 2018. (Dkt. No. 1 at 3.)

Newton claims that requiring her to exhaust administrative remedies in this case would be futile due to the time sensitive nature of her request for relief and the Bureau of Prisons ("BOP") general policy set forth in a "memorandum" of delayed implementation of the First Step Act. (*Id.* at 2-3.) Newton requests that the BOP be ordered to immediately award her good time credit entitled under the calculation set forth in the First Step Act, constituting an extra 7 days of good time credit per year for a total of 25 extra days. (*Id.* at 1, 4.)

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

As set forth above, Newton concedes that she did not exhaust her administrative remedies prior to bringing the present Petition because of time constraints and the futility of such a process given the BOP's established position. The BOP does not argue that the Petition should be denied due to a failure to exhaust administrative remedies.

Generally, federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, the Court has discretion to determine if the exhaustion requirement must be met. *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not affect a court's ability to decide cases where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

In "balancing the individual's interest in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion," courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. *McCarthy v. Madigan*, 503 U.S. 140, 146, 148 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile").

In this case, the balancing of interests favors having the issue raised by Newton promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the First Step Act. Therefore, the Court waives the exhaustion requirement and reaches the merits of Newton's claim.

B.  **Background Related to the First Step Act**

Prior to the First Step Act, the Sentencing Reform Act of 1984 modified the rate at which federal prisoners could earn good time credit, setting forth in 18 U.S.C. § 3624(b) that:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of **up to 54 days at the end of each year of the prisoner's term of imprisonmen**t, beginning at the end of the first year of the term, subject to

3

> determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) (emphasis added).

In implementing § 3624(b), the BOP counted the 54 days set forth in the statute against "time actually served" as opposed to the sentence "as imposed," resulting in federal prisoners only receiving 47 days of credit for each year of the term of imprisonment. *See Barber v. Thomas*, 560 U.S. 474, 477-79 482-83 (2010). The BOP's interpretation of the good time credit provision in § 3624 was upheld as a reasonable interpretation of the statute by the Supreme Court. *Id.* at 480. Pursuant to *Barber,* eligible federal prisoners received 47 days of good time credit for each year of the term of imprisonment.

The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018),[1] enacted on December 21, 2018, amended the good conduct time statute, § 3624(b), and provides in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, **of up to 54 days for each year of the prisoner's sentence imposed by the court**, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) *as amended by* Pub. L. 115–391, § 102(b)(1)(A)(i), 132 Stat. 5194, 5210 (emphasis added).

---

[1] The First Step Act can be found at: https://www.congress.gov/bill/115th-congress/senate-bill/756/text#toc-id368aca90db704a939b75a29fa150c3f7.

The First Step Act addressed the Supreme Court's decision in *Barber v. Thomas* by removing the language providing for 54 days of good time credit at the end of each year of a prisoner's "term of imprisonment" and substituting language providing 54 days of good time credit for each year of the prisoner's "sentence imposed by the court." 132 Stat. at 5210. As such, the amendment of § 3624(b) by the First Step Act will result in the recalculation of the projected release dates of most current inmates (other than those serving sentences for offenses committed before November 1, 1987, and sentences to life imprisonment). *Id.* at 5213. Congress also amended the method for prorating good conduct time for a partial year of a sentence imposed by a court. *Id.* at 5210.

**C.     The Recalculation of Plaintiff's Good Time Credit is Premature**

As stated previously, Newton seeks the immediate recalculation of her entitlement to good time credits pursuant to the First Step Act so she can receive 54 days instead of the 47 days per year, which would make her eligible for an earlier release. However, Newton cannot obtain such relief because the new method of calculating good time credit under the First Step Act is not yet in effect.

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (citations omitted); *see also United States v. Ways*, 832 F.3d 887, 893 (8th Cir. 2016) (citing *Johnson v. United States*, 529 U.S. 694, 702 (2000)) ("When a statute does not specify its effective date, and there is no clear congressional directive to the contrary, the statute takes effect on the date it is enacted."). When interpreting a statute, a court must "begin by analyzing the statutory language, 'assuming that the

5

ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (cleaned up) (quoting *Gross v. FBL Fin. Sers., Inc.*, 557 U.S. 167, 175 (2009)).  If the statute's language is plain, the court's sole function is to enforce the statute according to its terms, unless it leads to an absurd result.  *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000))).

While the First Step Act was enacted on December 21, 2018, Congress set forth its clear intention through the plain language of Section 102(b) that the amendments relating to the recalculation of good time credit do not go into effect until the Attorney General develops and releases a new risk and needs assessment.  The amendment to Section 3624(b) is found within Section 102(b)(1)(A) of the First Step Act.  *See* 132 Stat. at 5209-10.  Section 102(b) provides that the effective date for "this subsection"[2] as follows:

---

[2]   A general rule of legislative drafting is that the lower-case letter under a section is referred to as a "subsection" and the numeral below the subsection is referred to as a "paragraph."  *See* U.S. House of Representatives, Office of the Legislative Counsel, "Guide to Legislative Drafting," at https://legcounsel.house.gov/HOLC/Drafting_ Legislation/ Drafting_Guide.html.  "The terminology for referring to units within a section has become highly standardized and should be carefully followed to avoid confusion."  *Id.*  Thus, the effective date applies to the entirety of Section 102(b) and not just certain paragraphs of Section 102(b), as argued by Newton (Dkt. No. 1 at 3).  *See Musgrove v. Ortiz*, No. CV 19-5222 (NLH), 2019 WL 2240563, at *3 (D.N.J. May 24, 2019).

> EFFECTIVE DATE.—The amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, **as added by section 101(a) of this Act**.

132 Stat. at 5213 (emphasis added).

Pursuant to Section 101 of the First Step Act, the Attorney General must develop and release the new risk and needs assessment within "210 days from its enactment," which will occur sometime on July 19, 2019. *See* 132 Stat. at 5196. Based on the above unambiguous language of Section 102(b) of the First Step Act, the Court finds that amendments relating to the recalculation of good time credits are not yet in effect. As such, this Court has no authority at this point to order the BOP to recalculate the amount of good time credit to which Newton may be entitled to under the First Step Act. While the Court acknowledges that such an interpretation may adversely impact Plaintiff given that the Attorney General may take the full 210 days allotted to him in the Act to issue a risk and need assessment, the Court may not interpret the First Step Act in a manner contrary to its unambiguous plain language in order to avoid a possible burden to Newton. *See Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) (citation omitted) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.").

The Eighth Circuit has not yet ruled on the effective date of Section 102(b) of the First Step Act.  However, the majority of the district courts that have ruled on this issue have concluded that the amendment to § 3624(b)(1) related to good time credits does not take effect until the Attorney General has completed his development and release of the new risk and needs assessment, which must occur by sometime in mid-July (on or about July 19, 2019).  *See, e.g.*, *Rhodes v. United States*, No. 0:19-CV-047-HRW, 2019 WL 2273848, at *2 (E.D. Ky. May 28, 2019); *Musgrove,* 2019 WL 2240563, at *2-3; *United States v. Murgia*, No. 3:10-CR-0076-01-HRH, 2019 WL 2236067, at *3 (D. Alaska May 22, 2019); *Dailey v. Bureau of Prisons*, No. CV 1:19-0662-RMG, 2019 WL 2089167, at *1 (D.S.C. May 13, 2019); *Pizarro v. White*, No. 1:19-cv-343, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019); *Christopher v. Wilson*, Civil Action No. 4:19-cv-214-O, 2019 WL 1745968, at *1-2 (N.D. Tex. Apr. 18, 2019); *Matthews v. Williams*, Case No. 4:19CV518, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019); *Roy v. United States Bureau of Prisons*, NO: 2:19-CV-59-RMP, 2019 WL 1441622, at *1-2 (E.D. Wash. Apr. 1, 2019); *but see United States v. Mark John Walker*, Case No. 3:10-cr-00298-RRB-1 (D. Or. Feb. 7, 2019) (order requiring immediate recalculation under the First Step Act without any analysis of the language of the Act) (Dkt. No. 6-2).

Accordingly, Newton's argument that she is entitled to immediate relief lacks merit, and her request for a recalculation of her good time credit based upon the amendments is premature.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein**, IT IS RECOMMENDED THAT** Petitioner Michelle C. Newton's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE**.

Dated: June 3, 2019

*s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Pursuant to Local Rule 72.2(b), the Court sets the following deadlines: a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 10 days after being served a copy of the Report and Recommendation. A party may respond to those objections within 7 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).